# KURKOWSKI LAW, LLC

**By: Daniel M. Kurkowski, Esquire (NJ Bar 020822006)**
1252 Route 109 S.
Cape May, New Jersey 08204
(609) 884-1788; Fax (609) 884-1163
info@kurkowskilaw.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN, NEW JERSEY

| | |
|---|---|
| JOSEPH B. COBB, III,<br><br>*Plaintiff,*<br><br>v.<br><br>ARDAGH GLASS, INC.; JOHN MCLARTY; JAMES STRAHAN; JOHN DOE INDIVIDUALS AND BUSINESS ENTITIES (Plural 1-10), *jointly, severally and in the alternative,*<br><br>*Defendants.* | DOCKET NO.: 1:17-cv-04399<br><br>Civil Action<br><br>**FIRST AMENDED COMPLAINT AND JURY DEMAND** |

## COMPLAINT

Plaintiff, Joseph B. Cobb, III, residing on Main Street, in Cedarville, Cumberland County, New Jersey, by and through his counsel, Daniel M. Kurkowski, Esquire of Kurkowski Law, LLC, brings this First Amended Complaint against the Ardagh Glass, Inc., John McLarty, James Strahan and John Doe Individuals and Business Entities (Pl. 1-10) averring as follows:

## INTRODUCTION

Plaintiff brings this Complaint seeking recovery against his former employer, Ardagh Glass, Inc., John McLarty, James Strahan, and John Doe Individuals and Business Entities (Pl. 1-10), for violations of the New Jersey Law Against Discrimination, codified at N.J.S.A. 10:5-1, *et*

1

*seq.*, and its associated regulations of the New Jersey Administrative Code (hereinafter collectively referred to as "NJLAD") for discrimination on the basis of a disability, failure to reasonably accommodate a disability, failure to enter into interactive processes relating to reasonably accommodations and a disability, and wrongful termination for both of Plaintiff's disabilities: 1) Marfan Syndrome and 2) traumatic, fracture and orthopedic injuries to his hand (COUNT ONE); and against the individual Defendants for violation of the NJLAD for aiding and abetting discrimination, harassment, and retaliation on the basis of a disability for both of Plaintiff's disabilities: 1) Marfan Syndrome and 2) traumatic, fracture and orthopedic injuries to his hand (COUNT TWO).

## PARTIES

1. Plaintiff, Joseph B. Cobb, III ("Plaintiff"), is an individual and citizen of Cumberland County, the State of New Jersey and the United States of America.

2. Defendant, Ardagh Glass, Inc. ("Defendants"), upon information and belief, is a glass manufacturer with a principal place of business at 443 South East Avenue, Bridgeton, New Jersey 08302 and address for service located at 1509 South Macedonia Avenue, Muncie, Indiana 47302, and Plaintiff's former employer.

3. Defendant, John McLarty, individually and in a professional capacity, upon information and belief, during all relevant times is the Environmental Health & Safety (EHS) Manager of Ardagh Glass, Inc., and is an individual and citizen of Williamstown, Camden County, the State of New Jersey and the United States of America.

4. Defendant, James Strahan, individually and in a professional capacity, upon information and belief, during all relevant times is the Human Resources Manager of Ardagh Glass, Inc., and is an individual and citizen of Blackwood, Camden County, State of New Jersey and the United

States of America.

5. Defendants, John Doe Individuals and Business Entities (Plural 1-10), are fictitious names and whose identities are unknown to Plaintiff at the time of the filing of this Complaint and Plaintiff seeks to preserve his rights to amend the Complaint pursuant to the John Doe Rule if additional names of individuals or other business entities become known.

## JURISDICTION AND VENUE

1. This Court presently has jurisdiction over Plaintiff's claims because Defendants claim that this matter presents complete diversity per 28 U.S.C. §1338(a)(1), which Plaintiff disputes and contests.

## FACTS RELEVANT TO ALL COUNTS

1. Plaintiff was hired by Defendants' predecessor, Leone Industries, on or about January 31, 2012, as a General Utility Worker at their facility located in Bridgeton, New Jersey.

2. Defendants purchased Leone Industries shortly thereafter in Spring of 2012.

3. In or about early May 2012, Plaintiff's stellar work performance was noted and Plaintiff received a raise.

4. Plaintiff was an adequate, if not excellent, employee for Defendant and was never the recipient of any discipline while working for Defendant and work performance is not at issue in this case.

5. Very unfortunately, Plaintiff suffers from Marfan syndrome.

6. Marfan syndrome is a genetic disorder that affects the body's connective tissue. Connective tissue holds all the body's cells, organs and tissue together.

7. Because connective tissue is found throughout the body, Marfan syndrome can affect many different parts of the body, as well. Features of the disorder are most often found in the heart, blood vessels, bones, joints, and eyes. The lungs, skin and nervous system may also be affected.

8. Marfan syndrome does not affect intelligence.

9. People with Marfan syndrome are born with it, but features of the disorder are not always present until adulthood, as in Plaintiff's condition.

10. Plaintiff's Marfan syndrome has caused severe pain in his joints amongst other issues, such as herniations in his spine.

11. Plaintiff has worked with Marfan syndrome and such does not preclude him from performing the essential functions of his job.

12. Plaintiff excelled in his position and was issued another raise in or about January 2013.

13. Also in 2013, Plaintiff received a promotion to the position of I.S. Machine Operator.

14. In 2014, Plaintiff's stellar performance was further noted and Plaintiff was promoted to Shift Lead.

15. In 2015, Plaintiff's stellar performance was further noted and Plaintiff was promoted to Quality Control.

16. Due to Defendants' necessity, Plaintiff was moved back to Shift Lead in 2016, although such movement was an organizational decision, not to be considered a demotion, and did not result in a reduction in Plaintiff's pay.

17. Plaintiff was diagnosed with Marfan syndrome in 2013 by Dr. Steven Soloway, orthopedist/rheumatologist who informed Plaintiff that it was an incurable hereditary condition and the only treatment option was to manage the pain Plaintiff experienced as a result of such condition.

18. Plaintiff's Marfan syndrome stretches his joints and spine.

19. Due to his Marfan syndrome, Plaintiff was treated with pain management.

20. Plaintiff was referred to Dr. Christopher Ballas for pain management.

21. Plaintiff was prescribed opiate based medicine by Dr. Ballas for his pain management treatment.

22. The opiate based medicine Plaintiff was prescribed were increased in strength with time.

23. The opiate based medicine Plaintiff was prescribed included Percocet and Oxycodone and the strengths of such medicine were increased with time and the amount of pain Plaintiff experienced as a result of his Marfan syndrome.

24. Plaintiff worked for Defendants while his Marfan syndrome was treated with opiate based prescription medication and he excelled in his position for the years he worked while managing his pain with such medicine.

25. Plaintiff has always had a prescription from a doctor for any and all medication he was prescribed.

26. In early 2017, Dr. Ballas informed Plaintiff that medicinal marijuana is a better form of pain management for Plaintiff's Marfan syndrome.

27. On or about February 6, 2017, Dr. Ballas certified to Plaintiff's medical condition, causing the State of New Jersey, Department of Health, Medicinal Marijuana Program to issue Plaintiff a medicinal marijuana card and Dr. Ballas prescribed Plaintiff one ounce of medicinal marijuana; all pursuant to the New Jersey Compassionate Use of Medical Marijuana Act, N.J.S.A. 24:61-1 *et seq.* ("NJCUMMA").

28. Plaintiff began treatment with medicinal marijuana and subsequently dramatically reduced the opiates he relied upon for managing the pain caused by his Marfan syndrome.

29. Very unfortunately, upon information and belief, Defendants, or employees thereof; or their predecessor, Leone Industries, or employees thereof; removed the factory safety guards on a machine located at Defendant's facility and operated by Defendant.

30. The removal of the safety guards on the machine caused Plaintiff to fracture his hand while in the employ of Defendants on or about March 12, 2017.

31. Plaintiff immediately reported his injury to Defendants.

32. Plaintiff did not use medicinal marijuana before or during his workday on or about March 12, 2017.

33. As a result of getting injured, Plaintiff sought medical treatment under Defendants' workers compensation policy.

34. As a result of getting injured at Defendant's facility, Plaintiff was directed by Defendants to undergo a drug and alcohol screen.

35. Plaintiff presented his medicinal marijuana card and prescription of Dr. Ballas to his employer, Defendants.

36. Defendants' policy generally states that employees cannot take prescription pain medication before or during a scheduled shift.

37. Plaintiff never used medicinal marijuana prior to or during his shift on or about March 12, 2017, thus never violating such policy.

38. Plaintiff tested positive for medicinal marijuana in his drug and alcohol screen.

39. Plaintiff met with Defendant's EHS Manager, John McLarty, and Human Resources Manager, James Strahan, who decided Plaintiff would be offered the options of 1) termination or 2) admit himself into a drug rehabilitation center to rehabilitate what Defendants term a "drug problem."

40. Plaintiff does not suffer from drug addiction, Plaintiff's treatment for his Marfan syndrome is pain management and Plaintiff is lawfully prescribed opiate based medication as well as medicinal marijuana.

41. Plaintiff pleaded for his job, cited his excellent work performance, reminded Mr. Strahan and Mr. McLarty of his suffering from Marfan syndrome, told them he was lawfully prescribed marijuana as a different option as opposed to opiated based medication, showed Mr. Strahan and Mr. McLarty his medicinal marijuana card and prescription and otherwise complained that he was being discriminated against because of his disability.

42. Plaintiff requested a reasonable accommodation in the form of his being allowed to treat his Marfan syndrome with medicinal marijuana in hours outside of working hours or before working hours.

43. Plaintiff was flatly denied such reasonable accommodation, and Defendants, Mr. Strahan and Mr. McLarty failed to entertain any interactive process with Plaintiff to determine whether or not Plaintiff's disability could be accommodated.

44. Instead of conducting an interactive process with Plaintiff as required by the NJLAD and its associated administrative regulations of the New Jersey Department of Labor, Defendants told Plaintiff his options under Defendants' policies were to be terminated or enter rehab for drug addiction.

45. Plaintiff was denied such reasonable accommodation and summarily terminated on or about March 13, 2017.

46. Defendants McLarty and Strahan told Plaintiff that he has "a drug problem" and should go to into rehabilitation for addiction.

47. Defendant could have reasonably accommodated Plaintiff's disability and cannot show an undue burden.

48. At no time could Plaintiff not do the essential functions of his job.

49. Defendant failed to consider reasonable accommodations before terminating Plaintiff.

50. Plaintiff avers that he was terminated without interactive process, that his request for a reasonable accommodation was denied without such interactive process, that he was otherwise denied reasonable accommodations, and he was terminated solely because of his disability and its treatment course.

51. Plaintiff has never been under the influence of marijuana while at working and performing any of his work responsibilities, nor does his prescribed medication, including the medicinal marijuana, affect his ability to do his job.

52. Plaintiff does not have a drug addiction problem and Defendants suggestion that he "go to rehab" for addiction for his lawfully prescribed medicinal marijuana is not only insulting but clear evidence of the violation of the NJLAD.

53. But for Plaintiff's disability and Defendant's failure to accommodate such disability, Plaintiff would still be within the ranks of Defendant's employed.

54. Plaintiff satisfactorily performed the essential functions of his job without issue prior to his termination, had been promoted multiple times during the time he worked for Defendants and had been groomed for greater responsibilities.

55. On or about March 12, 2017, Plaintiff injured his hand while in Defendants employ.

56. Plaintiff told Mr. McLarty and Mr. Strahan about his disability prior to the events of March 12, 2017.

57. Plaintiff seriously injured his hand in the accident of March 12, 2017, to the extent that the tendons and veins in his hand were openly visible.

58. Plaintiff told Mr. McLarty and Mr. Strahan that he was prescribed medicinal marijuana for the Marfan syndrome he suffers from.

59. Plaintiff noticed an attitude open and obvious change to the negative in both Mr. McLarty

and Mr. Strahan after he told them of his medicinal marijuana treatment.

60. Instead of taking Plaintiff to the hospital, or even calling 911, Mr. McLarty directed another employee to take Plaintiff for a drug test at an Urgent Care (noting that such employee bypassed two hospitals on the way to take Plaintiff to Urgent Care).

61. Urgent Care physicians told Plaintiff that he had a broken hand and should be immediately taken to the emergency room.

62. Mr. McLarty and Mr. Strahan mandated Plaintiff participate in the drug and alcohol test before medical attention was provided.

63. Mr. McLarty and Mr. Strahan would not allow Plaintiff to seek medical attention until he participated in a drug and alcohol test.

64. Plaintiff was mandated to undergo a breath analysis and urinalysis before he was taken to a local hospital emergency room.

65. At the emergency room, Plaintiff was told he could not return to work, would require medical leave and after such medical leave would require a reasonable accommodation or "light duty," which Plaintiff told Mr. McLarty and Plaintiff noticed further attitude change to the negative.

66. Mr. McLarty told Plaintiff that he did not want him going onto medical leave, and in other ways pressured Plaintiff not to exercise medical leave.

67. When Plaintiff returned from the hospital, Mr. McLarty's negative attitude towards him was apparent and obvious.

68. Plaintiff again requested that he be accommodated by both allowing him to work while taking his prescription medication (marijuana) after work, allowing him to take medical leave, and allowing him to work in a light duty capacity after such medical leave.

69. Mr. McLarty's attitude not only was negative, but now angry with Plaintiff.

70. Mr. McLarty was angry with Plaintiff because Plaintiff was prescribed marijuana as a form of medication, angry with Plaintiff because he was asking for medical leave, angry with Plaintiff because he requested "light duty" accommodations, and immediately sent Plaintiff home.

71. Plaintiff complained that he was being discriminated against because of his disabilities.

72. The following day, Plaintiff arrived at Defendants' facility and was barred from entry.

73. Plaintiff produced paperwork to Mr. McLarty and was told by Mr. McLarty that Mr. Strahan directed him [McLarty] to bar Plaintiff from entry.

74. Mr. Strahan stated to Plaintiff, "there is no need for medical marijuana."

75. Mr. Strahan stated to Plaintiff, "it's a drug problem, you should go to rehab for it."

76. Mr. Strahan issued the directive that Plaintiff could not be on the premises and to add to the humiliation Plaintiff suffered, he was escorted from the premises.

77. Plaintiff further complained that he was being discriminated against because of his disabilities.

78. Plaintiff was sent home and told by Mr. Strahan that he would be called, which never occurred and Mr. Strahan has since cut off all communications with Plaintiff.

79. But for the differential treatment Plaintiff experienced because 1) he told his employer that he suffers from Marfan syndrome, 2) he told his employer he is prescribed medicinal marijuana to treat his Marfan syndrome, 3) he requested reasonable accommodations regarding his medicinal marijuana for his Marfan syndrome, 4) he requested reasonable accommodations regarding his injured, fractured, and traumatized hand 5) he complained that he was being discriminated against because of his Marfan syndrome, injured hand, requests for reasonable accommodations, Plaintiff was the victim of discrimination, harassment, and retaliation.

80. The individuals, Mr. McLarty and Mr. Strahan are named Defendants because they aided and abetted discrimination on the basis of his disabilities, harassed Plaintiff because of his disability and labelled him a drug addict, and retaliated against Plaintiff when he complained of discrimination on the basis of his disabilities.

## **COUNT ONE**

1. Plaintiff repeats the allegations contained in the preceding Facts Relevant to All Counts Section and incorporates them as Paragraph 1 of this Count One as though they were fully set forth at length herein.

2. At all times relevant to Plaintiff's claims, he was an employee or former employee of Defendant and disabled as defined by the NJLAD.

3. Plaintiff avers that his disabilities and requests for accommodations are the reason that he was summarily terminated on or about March 13, 2017.

4. Plaintiff notified Defendant of his disabilities.

5. Plaintiff and his physicians notified Defendant of his necessities of reasonable accommodations.

6. Defendant terminated Plaintiff without any interactive process with Plaintiff to determine if Defendant could accommodate his disabilities or whether such accommodation for his disabilities represented an undue burden on their business.

7. Defendant terminated Plaintiff due to the medication he was lawfully prescribed and legally took for his Marfan syndrome.

8. Defendant terminated Plaintiff due to his injured, traumatized and fractured hand and requests for accommodations relating to such.

9. Defendants did not consider reasonable accommodations nor was anything that

could be perceived to be an interactive process performed in relation to Plaintiff.

10. Plaintiff never used medicinal marijuana before or during his scheduled work shift, however even using such medicine at other times will cause Plaintiff's drug screens to reflect medicinal marijuana use.

11. Defendant treated Plaintiff in a discriminatory manner due to Plaintiff's disabilities.

12. Defendant terminated Plaintiff due to his disabilities and off-work use of prescribed medical treatment.

13. Defendant failed to accommodate Plaintiff's injured hand, pressured Plaintiff not to exercise medical leave, and otherwise discriminated against Plaintiff because of his injured hand and necessity of medical leave.

14. Defendants retaliated against Plaintiff because of his complaints that Defendants discriminated against Plaintiff because of his hand injury and request for accommodations, and his Marfan syndrome and request for accommodations.

15. Plaintiff's termination, an adverse act, was committed by Defendants, and the individually pled individuals of Defendants' upper management and/or supervisors.

16. Although Defendant knew or should have known of the discrimination suffered, Defendant failed to take any corrective measures to stop or prevent the discrimination in violation of the NJLAD.

17. These illegal actions were committed against Plaintiff and the conduct complained of would not have occurred but for Plaintiff's disability.

18. Defendants have engaged in behavior that violates the NJLAD and thereby irreparably injured Plaintiff.

19. The NJLAD, N.J.S.A. 10:5-12(a), states it is an unlawful employment practice for an employer, because of disability and/or gender, to refuse to employ, refuse to hire, or to bar from employment an individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

20. It is unlawful to discriminate against persons because they are or have been at any time disabled, unless, in spite of reasonable accommodation, the nature and extent of their disabilities reasonably preclude or impede the adequate or safe performance of their particular employments. N.J.A.C. 13:13-1.3(1).

21. An employer must make a reasonable accommodation to the limitations of an employee with a disability, and a recognized reasonable accommodation is a leave of absence. N.J.A.C. 13:13-2.5(b)(1)(ii).

22. Employers are required to "consider the possibility of reasonable accommodation before firing a person with a disability on the grounds that his or her disability precludes job performance." N.J.A.C. 13:13-2.5(b)(2).

23. Job restructuring, modified work schedules, reassignment, and other actions are all accommodations outlined by the regulations. Id.

24. Whether an employer has failed to make a reasonable accommodation will be made on a case-by-case basis. N.J.A.C. 13:13-2.5(b).

25. An employer must engage in an interactive process with the employee who requests reasonable accommodations, it is the employer who must make the reasonable effort to determine the appropriate accommodation and it the employer's burden to conduct some form of reasonable procedure or practice that could be interpreted to show that the employer engaged with the employee to determine what accommodation is necessary. *Tynan v.*

*Vicinage 13 of the Superior Court*, 351 N.J. Super. 385, 400 (App. Div. 2002), *Taylor v. Phoenixville Sch. Dist.*, 184 F. 3d 296, 319 (3d Cir. 1999).

26. But for Plaintiff's disabilities and Defendants failure to both reasonably accommodate his disabilities and enter into an interactive process with Plaintiff relating to his necessary accommodations, he would still be gainfully employed by Defendant and performing to the same excellent standard as he always had worked previously.

27. As a direct and proximate result of Defendant's actions Plaintiff's rights were offended under the NJLAD for discrimination on the basis of disabilities, failure to reasonably accommodate disabilities, failure to enter into interactive processes with Plaintiff relating to his disabilities and reasonable accommodation requests, and wrongful termination causing the Plaintiff to suffer economic loss, loss of income and other pecuniary harm; diminished career opportunity, harm to his business reputation; disruption to his family life; loss of self-esteem; emotional trauma and distress; and other harm, pain and suffering.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly, severally and in the alternative for compensatory damages, punitive damages, front pay, back pay, interests, attorney's fees and costs, emotional distress damages, reinstatement any other damages available under the NJLAD to which a judge or jury may award, and such other relief as the Court may deem equitable and just.

## COUNT TWO

1. Plaintiff repeats the allegations contained in the preceding Facts Relevant to All Counts Section and in Count One and incorporates them as Paragraph 1 of this Count Two as though they were fully set forth at length herein.

2. At all times relevant to Plaintiff's claims, he was an employee or former

employee of Defendant.

3.    Defendants John McLarty, James Strahan and John Doe Individuals (Plural 1-10) wrongfully aided and abetted Defendants unlawful, discriminatory treatment of Plaintiff, in violation of the NJLAD and for all causes of action herein.

4.    Because of the collective and individual acts of each Defendant, and due to their plan, scheme, and motives to terminate and Plaintiff in an unlawfully discriminatory manner, Defendants John McLarty, James Strahan and other upper management employees wrongfully aided and abetted discrimination.

5.    As a concerted and individual effort, Defendants John McLarty, James Strahan and other upper management employees conspired to discriminate, harass, retaliate and summarily terminate Plaintiff.

6.    The NJLAD makes it unlawful to aid or abet a discriminatory act and individual liability will be imposed based on deliberate indifference or affirmatively harassing acts.

7.    The individuals, John McLarty, James Strahan and John Doe Individuals (Plural 1-10), not only discriminated, harassed and retaliated against Plaintiff for his disabilities through employment decisions, but also actively participated in the discrimination, harassment, and retaliation. These individual (and other John Doe Defendants) were the source of the violations of the NJLAD.

8.    As a direct and proximate result of Defendant's actions Plaintiff's rights were offended under the NJLAD for aiding and abetting discrimination on the basis of disabilities causing the Plaintiff to suffer economic loss, loss of income and other pecuniary harm; diminished career opportunity, harm to his business reputation; disruption to his family life; loss of self-esteem; emotional trauma and distress; and other harm, pain and suffering.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly, severally and in the alternative for compensatory damages, punitive damages, front pay, back pay, interests, attorney's fees and costs, emotional distress damages, reinstatement any other damages available under the NJLAD to which a judge or jury may award, and such other relief as the Court may deem equitable and just.

KURKOWSKI LAW, LLC

<u>/s/         Daniel Kurkowski</u>
Daniel M. Kurkowski, Esq.
Attorneys for Plaintiff

Dated: July 13, 2017

## CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify that there are no other actions to my knowledge pending in any Court concerning the subject matter of the Complaint contained herein. I further certify that there are no other parties to my knowledge who should be joined in this action at this time.

Nothing contained in this Complaint shall be construed or deemed an admission, of any kind, against Plaintiff. This is not a verified complaint and is a document prepared by counsel.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

KURKOWSKI LAW, LLC

<u>/s/         Daniel Kurkowski</u>
Daniel M. Kurkowski, Esq.
Attorneys for Plaintiff

Dated: July 13, 2017

## NOTICE OF TRIAL COUNSEL

PLEASE TAKE NOTICE that Daniel M. Kurkowski, Esq. is hereby designated as Trial counsel in the above captioned litigation on behalf of Kurkowski Law, LLC, attorneys for Plaintiff.

KURKOWSKI LAW, LLC

<u>/s/         Daniel Kurkowski</u>
Daniel M. Kurkowski, Esq.
Attorneys for Plaintiff

Dated: July 13, 2017

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure for all issues so triable.

KURKOWSKI LAW, LLC

<u>/s/         Daniel Kurkowski</u>
Daniel M. Kurkowski, Esq.
Attorneys for Plaintiff

Dated: July 13, 2017

## DEMAND TO PRESERVE EVIDENCE

1. All Defendants are hereby directed and demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's cause of action and/or prayers for relief, to any defenses to the same, and pertaining to any party, including, but not limited to, electronic data storage, closed circuit TV footages, digital images, computer images, cache memory, searchable data, emails, spread sheet,

employment files, memos, text messages and any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, Google+, Instagram, etc.) and any other information and /or data and/or things and/or documents, including specifically but not limited to the time cards, time sheets, and/or log books and all payroll records (both physical documents and electronic documents and/or data), which may be relevant to any claim or defense in this litigation.

2. Failure to do so will result in separate claims for spoliation of evidence and/or for appropriate adverse inferences.

KURKOWSKI LAW, LLC

*/s/     Daniel Kurkowski*
Daniel M. Kurkowski, Esq.
Attorneys for Plaintiff

Dated: July 13, 2017