Paul D. Erian
**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
T:  (973) 520-2550
F:  (973) 520-2551
E-mail:  paul.erian@dlapiper.com
*Attorneys for Defendants Ardagh Glass Inc. (improperly pleaded as "Ardagh Glass, Inc. d/b/a Ardagh Group"), John McLarty and James Strahan*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## (CAMDEN DIVISION)

| | |
|---|---|
| JOSEPH B. COBB, III,<br><br>         Plaintiff,<br><br>v.<br><br>ARDAGH GLASS, INC. d/b/a ARDAGH GROUP; ARDAGH GLASS PACKAGING, INC. d/b/a ARDAGH GROUP; JOHN MCLARTY; JAMES STRAHAN; JOHN DOE INDIVIDUALS AND BUSINESS ENTITIES (Plural 1-10), *jointly, severally and in the alternative,*<br><br>         Defendants. | Case No.:  1:17-CV-04399<br><br>**BRIEF IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>**Document Electronically Filed**<br><br>**Hearing Date: Sept. 5, 2017**<br><br>**Oral Argument Requested Per L.R. 78.1** |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................ 1

II. FACTUAL BACKGROUND .................................................................................... 1

III. LEGAL ARGUMENT ................................................................................................ 2

    A. Standard of Review ......................................................................................... 2

    B. NJCUMMA Does Not Require Employers To Accommodate Marijuana Use ................................................................................................................... 2

    C. The Federal Controlled Substances Act Preempts the NJCUMMA ....................... 4

    D. No Claim For Retaliation ................................................................................. 6

    E. No Claim For Hostile Work Environment ............................................................ 7

IV. CONCLUSION ........................................................................................................... 8

i

## TABLE OF AUTHORITIES

Page

**CASES**

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................2

*Campbell v. Supreme Court of New Jersey*,
  2015 WL 5770129 (D.N.J. Sept. 30, 2015) ............................................................6

*Casias v. Wal-Mart Stores, Inc.*,
  764 F. Supp. 2d 914 (W.D. Mich. 2011), *aff'd* 695 F.3d 428 (6th Cir. 2012) ........3

*Curry v. MillerCoors, Inc.*,
  No. 12–cv–02471–JLK, 2013 WL 4494307 (D. Colo. Aug. 21, 2013) ...............4, 7

*Emerald Steel Fabricators, Inc. v. Bureau of Labor & Indus.*,
  348 Or. 159 (2010) ..................................................................................................5

*Garcia v. Tractor Supply Co.*,
  154 F. Supp. 3d 1225 (D.N.M. 2016) ........................................................3, 5, 6, 7

*Jackson v. Temple Univ. Hosp., Inc.*,
  501 F. App'x 120, 2012 WL 4947928 (3d Cir. Oct. 18, 2012) ..............................6

*Longo v. Purdue Pharma, L.P.*,
  2014 WL 2800817 (D.N.J. June 19, 2014) ............................................................7

*Roe v. Teletech Customer Care Mgmt., LLC*,
  257 P.3d 586 (Wash. 2011) .................................................................................3, 7

*Ross v. Gilhuly*,
  755 F.3d 185 (3d Cir. 2014) ....................................................................................6

*Ross v. RagingWire Telecommunications, Inc.*,
  42 Cal. 4th 920 (Cal. 2008) .................................................................................3, 7

*Ventura v. Montclair State Univ.*,
  2011 WL 6339656 (D.N.J. Dec. 19, 2011) ............................................................7

*Washburn v. Columbia Forest Prods., Inc.*,
  340 Or. 469 (2006) (Kistler, concurring) ................................................................5

**STATUTES**

N.J. Stat. Ann. § 24:6I-2(e) ............................................................................................3

## TABLE OF AUTHORITIES
(continued)

**Page**

N.J. Stat. Ann. § 24:6I-14 ...................................................................................................3

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................2, 8

EAST\145011410.2

I.     INTRODUCTION

Plaintiff Joseph Cobb was required to submit to a mandatory drug test after he was involved in an industrial accident. He tested positive for marijuana. His employer, Ardagh Glass Inc. ("Ardagh"), terminated his employment, consistent with its zero tolerance policy for drugs. Cobb now claims that he was using medical marijuana prescribed by his physician to treat pain from Marfan's syndrome. He has filed suit alleging that Ardagh was required to accommodate his marijuana usage under the New Jersey Law Against Discrimination (NJLAD) and the New Jersey Compassionate Use Medical Marijuana Act ("NJCUMMA").

Cobb's claims are meritless. First, NJCUMMA only affords users with *criminal* immunity. The text of the statute and recent proposed amendments make it clear that the NJCUMMA was not intended to, and does not, regulate private employment rights. Second, if the NJCUMMA could be construed to require employers to accommodate an employee's possession and use of marijuana, it would be preempted by the federal Controlled Substances Act ("CSA"), which criminalizes the possession of marijuana regardless of its purpose.

In response to Ardagh's removal of this case, Cobb has also tacked on boilerplate allegations of retaliation and harassment against Ardagh's managers. Those claims fail because: (1) the decision to terminate Cobb's employment was made before Cobb engaged in alleged protected activity; (2) it is not unlawful retaliation to refuse to excuse a positive drug test; and (3) a couple of alleged comments questioning the legitimacy of Cobb's illegal drug usage does not come close to establishing the type of severe and pervasive harassment necessary to state a hostile environment claim. Cobb's claims should be dismissed with prejudice.

II.    FACTUAL BACKGROUND

On March 12, 2017, Cobb was injured in a workplace accident and sought medical attention. (First Am. Compl. ("FAC"), Dkt. No. 10, at ¶¶ 30, 33.) Because he was injured at

1

Ardagh's facility, he was directed to undergo a drug and alcohol screen pursuant to Ardagh company policy. (*Id.* at ¶¶ 34, 36.) Cobb tested positive for marijuana. (*Id.* at ¶ 38.) Cobb alleges that he was prescribed medical marijuana by his healthcare provider to manage the pain associated with his Marfan syndrome. (*Id.* at ¶¶ 26-27.)

Cobb met with Ardagh's Environmental Health & Safety Manager, John McLarty, and Human Resources Manager, James Strahan, who advised Cobb that he would be terminated pursuant to company policy, or that – due to his length of service – he had the option of attending a drug rehabilitation center. (*Id.* at ¶¶ 39.) Cobb claims that he then advised Strahan and McLarty that the marijuana had been lawfully prescribed and requested an accommodation in the form of permitting him to use medical marijuana outside of working hours and return to light duty. (*Id.* at ¶¶ 41-42.) Cobb also declined to enroll in a drug rehabilitation program. (*See id.* at ¶ 40.) Cobb claims that McLarty and Strahan denied his request for accommodation, failed to engage in an interactive process with him, made remarks that were dismissive of the legitimacy of his medical marijuana usage, and then terminated his employment pursuant to Ardagh's company policies. (*E.g. id.* at ¶¶ 41-45, 74-75.)

## III.   LEGAL ARGUMENT

### A.   Standard of Review

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a claimant must allege facts, that if accepted as true, are sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face."   *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007).

### B.   NJCUMMA Does Not Require Employers To Accommodate Marijuana Use

Contrary to Cobb's assertion, NJCUMMA does not amend the NJLAD, or otherwise impose an obligation upon New Jersey employers to permit employees to use medical marijuana

2

inside or outside the workplace. NJCUMMA was enacted for the narrow purpose of shielding medical marijuana users from *criminal* liability. *See* N.J. Stat. Ann. § 24:6I-2(e) ("[t]he purpose of this act is to protect from arrest, prosecution, property forfeiture, and criminal and other penalties, those patients who use marijuana to alleviate suffering from debilitating conditions."). The text of the NJCUMMA expressly provides that, "[n]othing in this act shall be construed to require . . . an employer to accommodate the medical use of marijuana in any workplace." N.J. Stat. Ann. § 24:6I-14. Courts across the country interpreting nearly identical statutory language have consistently held that the limited *criminal* immunity conferred by state medical marijuana laws does not shield employees from adverse employment actions resulting from their marijuana consumption, regardless of where or for what purpose it was consumed:

- *Roe v. Teletech Customer Care Mgmt., LLC*, 257 P.3d 586, 590-92 (Wash. 2011) (affirming dismissal of wrongful termination claim based on failed drug test; the statute's protection from criminal prosecution does not "regulate the conduct of a private employer or protect an employee from being discharged because of authorized medical marijuana use," and statute's explicit rejection of a duty to accommodate on-site use does not support reading in an implicit obligation to accommodate off-site use).

- *Casias v. Wal-Mart Stores, Inc.*, 764 F. Supp. 2d 914, 921-26 (W.D. Mich. 2011), *aff'd* 695 F.3d 428 (6th Cir. 2012) (affirming dismissal of wrongful discharge claim based on failed drug test; "The fundamental problem with Plaintiff's case is that the [Michigan Medical Marijuana Act] does not regulate private employment. Rather, the Act provides a potential defense to criminal prosecution or other adverse action by *the state*.")

- *Ross v. RagingWire Telecommunications, Inc.*, 42 Cal. 4th 920, 926-33 (Cal. 2008) (same).

- *Garcia v. Tractor Supply Co.*, 154 F. Supp. 3d 1225, 1228-30 (D.N.M. 2016) (dismissing wrongful discharge claim based on failed drug test; state medical marijuana law does not require a private employer to accommodate an employee's medical marijuana use).

- *Curry v. MillerCoors, Inc.,* No. 12–cv–02471–JLK, 2013 WL 4494307, at *7 (D. Colo. Aug. 21, 2013) (granting motion to dismiss; "discharging an employee [for failing a drug test] is lawful, regardless of whether the employee consumed marijuana on a medical recommendation, at home or off work.").

3

Two recent proposed amendments to NJCUMMA further confirm that the New Jersey legislature does not view the current law as prohibiting employers from terminating employees who use marijuana under a doctor's prescription. In 2014, a bill was introduced in the New Jersey General Assembly and Senate to amend the NJCUMMA to protect medical marijuana users against adverse employment actions "based on the individual's use of medical marijuana . . . . unless the employer establishes by clear and convincing evidence that the authorized use of medical marijuana had or would have a significant detrimental impact on the individual's performance of a bona fide occupational qualification . . . ." A.B. 3523, 2014, 216th Leg. Session (N.J. 2014); S.B. 2312, 2014 2016th Leg. Session (N.J. 2014). The bill died after being referred to committee for review.

In 2016, companion legislative proposals were introduced in the State General Assembly and Senate seeking to amend the NJCUMMA. In pertinent part, the proposed identical amendments provide:

> Unless an employer establishes by a preponderance of the evidence that the lawful use of medical marijuana has impaired the employee's ability to perform the employee's job responsibilities, it shall be unlawful to take any adverse employment action against an employee who is a qualified registered patient using medical marijuana . . . .

A.B. 2482, 2016, 217th Leg. Session (N.J. 2016); S.B. 2161, 2016, 217th Leg. Session (N.J. 2016). This proposed amendment has been referred to the respective Health and Senior Services Committees for the State Assembly and Senate, where it has remained in committee review for over one year.

### C.  The Federal Controlled Substances Act Preempts the NJCUMMA

Alternatively, if the NJCUMMA could be interpreted to require Ardagh to accommodate Cobb's marijuana use, it would be squarely preempted by the federal CSA. The CSA prohibits the possession of marijuana, regardless of where it is consumed and whether it is used for

4

recreational or medicinal purposes. *Washburn v. Columbia Forest Prods., Inc.*, 340 Or. 469, 480-82 (2006) (Kistler, concurring). Self-evidently, an employee cannot use marijuana without possessing it, in direct violation of federal law. *Id*. While a state is under no obligation to criminalize marijuana use under state law or devote state law enforcement resources to enforcing federal law, where state law goes further and affirmatively requires that an employer accommodate an employer's illegal possession and use of marijuana, the state law conflicts with federal law and is preempted. *Washburn*, 340 Or. at 480-82; *see also Garcia*, 154 F. Supp. 3d at 1229-30 ("Mr. Garcia does not merely seek state-law immunity for his marijuana use. Rather, he seeks the state to affirmatively require [the employer] to accommodate his marijuana use. . . . To affirmatively require [the employer] to accommodate Mr. Garcia's illegal drug use would mandate [the employer] to permit the very conduct the [Controlled Substances Act] proscribes."); *Emerald Steel Fabricators, Inc. v. Bureau of Labor & Indus.*, 348 Or. 159, 177-78, 190 (2010) (employer did not unlawfully discharge employee for use of medical marijuana; to the extent state law affirmatively authorized the use of medical marijuana, it stands as an obstacle to the Controlled Substances Act and is preempted).

The Oregon Supreme Court's decision in *Emerald Steel Fabricators*, 348 Or. at 182, explained this common-sense principle well:

> If Congress chose to prohibit anyone under the age of 21 from driving, states could not authorize anyone over the age of 16 to drive and give them a license to do so. The state law would stand as an obstacle to the accomplishment of the full purposes and objectives of Congress (keeping everyone under the age of 21 off the road) and would be preempted. Or, to use a different example, if federal law prohibited all sale and possession of alcohol, a state law licensing the sale of alcohol and authorizing its use would stand as an obstacle to the full accomplishment of Congress's purposes. [The Oregon medical marijuana law] is no different. To the extent that [the Oregon law] authorizes persons holding medical marijuana licenses to engage in conduct that the Controlled Substances Act explicitly prohibits, it poses the same obstacle to the full accomplishment of Congress's purposes (preventing all use of marijuana, including medical uses).

5

*See also Garcia*, 154 F. Supp. 3d at 1229-30. Put simply, states lack the constitutional authority to compel employers to make an exception to federal drug law.

### D. No Claim For Retaliation

Cobb alleges for the first time in his Amended Complaint that after he was notified that his positive drug test would result in termination, he advised Strahan and McLarty that he believed the Company was required to accommodate his medical marijuana use. He, therefore, asked the Company to permit him to consume marijuana while off-duty and to return him to work immediately in a light duty position. As Cobb sees it, his request was: a) protected activity; and b) the refusal to capitulate was an independent act of retaliation. Cobb is wrong.

To establish a *prima facie* case of retaliation under the NJLAD, the plaintiff must show a "causal connection between the protected activity and the adverse employment action." *Campbell v. Supreme Court of New Jersey*, 2015 WL 5770129, at *2 (D.N.J. Sept. 30, 2015). Here, before Cobb requested an accommodation, informed the Company that he had been prescribed marijuana, or otherwise engaged in protected activity, Ardagh had already decided to terminate his employment based upon his positive drug test, consistent with company policy. (FAC ¶¶ 39, 41, 44.) It is, of course, logically impossible for that decision to have been made in retaliation for conduct or protected activity that had yet to occur. *Ross v. Gilhuly*, 755 F.3d 185, 194 (3d Cir. 2014) (affirming summary judgment for employer on retaliation claim; fact that employee was placed on performance improvement plan before employer knew he was sick defeated any inference of retaliation); *Jackson v. Temple Univ. Hosp., Inc.*, 501 F. App'x 120, 2012 WL 4947928, at *3 (3d Cir. Oct. 18, 2012) (affirming summary judgment on retaliation claim where decision to eliminate employee's position was made before employee engaged in protected activity); *Longo v. Purdue Pharma, L.P.*, 2014 WL 2800817, at *2 (D.N.J. June 19,

2014) (dismissing retaliation claim; plaintiff's protected activity could not have caused adverse employment action when it occurred after termination decision had already been made).

Moreover, it was not discriminatory or retaliatory for Ardagh to refuse to change its decision and return Cobb to work following his positive test for marijuana. Although his theory is not entirely clear, Cobb appears to believe that Ardagh retaliated against him by refusing to excuse his positive drug test and permit him to engage in future off-duty marijuana usage as a reasonable accommodation for his disability. But, as discussed above, an employer has no duty "to accommodate the use of illegal drugs." *Ross*, 42 Cal. 4th at 926; *Roe*, 257 P.3d at 597 & n.10 (it is not a reasonable accommodation of a disability to require an employer to violate federal law, *or to allow an employee to violate federal law*, by employing a person who uses medical marijuana); *Garcia*, 154 F. Supp. 3d at 1228-29 (same). And "a positive test for marijuana, whether from medical or any other use, is a legitimate basis for discharge." *Curry v. MillerCoors, Inc.*, 2013 WL 4494307, at *3. Ardagh did not retaliate against Cobb by refusing to grant him an accommodation it had no obligation to provide.

### E.     No Claim For Hostile Work Environment

Cobb's final claim is that on the day he was told he was terminated, Strahan and McLarty were dismissive of his claim that he needed marijuana to treat an illness. Cobb does not disclose the substance of the comments, but in any event, a few alleged comments made during a one-hour meeting expressing doubt about the legitimacy of his marijuana use is hardly severe and pervasive enough to state a hostile work environment claim. *See Ventura v. Montclair State Univ.,* 2011 WL 6339656, at *10-11 (D.N.J. Dec. 19, 2011) (granting summary judgment for employer on hostile environment claim; "very discourteous" and repetitive mocking of the plaintiff by his supervisor and coworkers on the basis of his protected characteristics was not "sufficiently extreme and hostile to constitute pervasive or severe invidious harassment").

## IV.     CONCLUSION

For the reasons set forth above, Ardagh respectfully requests that Cobb's First Amended Complaint be dismissed with prejudice in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).[1]

Respectfully submitted,

Dated:  August 7, 2017

 */s/ Paul Erian*
Paul D. Erian
**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway
Suite 120
Short Hills, New Jersey 07078-2704
T:  (973) 520-2550
F:  (973) 520-2551
E-mail:  paul.erian@dlapiper.com

Rachel Cowen
(*pro hac vice* motion to be filed)
**DLA PIPER LLP (US)**
444 W. Lake Street, 9th Floor
Chicago, IL 60606
T:  (312) 368-4000
F:  (312) 251-5844
E-mail:  rachel.cowen@dlapiper.com

*Attorneys for Defendants Ardagh Glass Inc. (improperly pleaded as "Ardagh Glass, Inc. d/b/a Ardagh Group"), John McLarty and James Strahan.*

---

[1] Defendants McLarty and Strahan do not join this Motion because, for the reasons explained in Ardagh's Opposition to Plaintiff's Motion to Remand, they were fraudulently joined and are not proper parties to this action.