Paul D. Erian
**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
T: (973) 520-2550
F: (973) 520-2551
E-mail: paul.erian@dlapiper.com
*Attorneys for Defendants Ardagh Glass Inc. (improperly pleaded as "Ardagh Glass, Inc. d/b/a Ardagh Group"), John McLarty and James Strahan*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**(CAMDEN DIVISION)**

| | |
|---|---|
| JOSEPH B. COBB, III,<br>Plaintiff,<br><br>v.<br><br>ARDAGH GLASS, INC. d/b/a ARDAGH GROUP; ARDAGH GLASS PACKAGING, INC. d/b/a ARDAGH GROUP; JOHN MCLARTY; JAMES STRAHAN; JOHN DOE INDIVIDUALS AND BUSINESS ENTITIES (Plural 1-10), *jointly, severally and in the alternative,*<br>Defendants. | Case No.: 1:17-CV-04399<br><br>**OPPOSITION TO MOTION TO REMAND**<br><br>**Document Electronically Filed**<br><br>**Hearing Date: Not Set**<br>**(Previously Set for August 7, 2017)**<br><br>**Oral Argument Requested per L.R. 78.1** |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................................................................................................... 1

II. FACTUAL BACKGROUND ....................................................................................... 2

III. ARGUMENT ............................................................................................................. 4

A. The Citizenship of Fraudulently Joined Parties Must Be Disregarded for Purposes of Determining Diversity Jurisdiction ....................................................... 4

B. Cobb Has Not Pled Conduct Against McLarty or Strahan to Reasonably Support a Claim for Aiding and Abetting ..................................................... 4

1. Strahan and McLarty Could Not Have Known That Refusing To Permit Employees To Use Medical Marijuana Is A Violation of the New Jersey Law—No One Actually Knows That .................................... 5

2. Strahan and McLarty Did Not Substantially Assist In Any Violation ....................................................................................... 7

C. The New Retaliation & Hostile Work Environment Claims Do Not Support Jurisdiction Over Strahan and McLarty ............................................................ 9

IV. CONCLUSION ......................................................................................................... 10

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Barbuto v. Advantage Sales & Marketing*,
__ N.E.3d __, 477 Mass. 456 (Mass. 2017) .....5

*Brandt v. Anheuser-Busch, Inc.*,
2007 WL 1175751 (D.N.J. Apr. 19, 2007) .....9

*Casias v. Wal-Mart Stores, Inc.*,
764 F. Supp. 2d 914 (W.D. Mich. 2011), *aff'd* 695 F.3d 428 (6th Cir. 2012) .....5, 7, 8

*Cicchetti v. Morris Cty. Sheriff's Office*,
194 N.J. 563 (2008) .....4, 5, 6

*Collins v. James W. Turner Constr., Ltd.*,
No. 16-2877 (FLW)(LGH), 2017 WL 201236 (D.N.J. Jan 18, 2017) .....2, 7, 8

*Curry v. MillerCoors, Inc.*,
No. 12–cv–02471–JLK, 2013 WL 4494307 (D. Colo. Aug. 21, 2013) .....5

*Docherty v. Cape May Cty.*,
No. CV 15-8785 (RMB), 2017 WL 2819963 (D.N.J. June 29, 2017) .....7

*Emerald Steel Fabricators, Inc. v. Bureau of Labor & Indust.*,
348 Or. 159 (2010) .....6

*Failla v. City of Passaic*,
146 F.3d 149 (3d Cir. 1998) .....4

*Garcia v. Tractor Supply Co.*,
154 F. Supp. 3d 1225 (D.N.M 2016) .....5

*In re Briscoe*,
448 F.3d 201 (3d Cir. 2006) .....1, 4

*James v. City of Costa Mesa*,
700 F.3d 394 (9th Cir. 2012) .....6

*Reno v. Baird*,
18 Cal. 4th 640 (Cal. 1998) .....6

*Roe v. Teletech Customer Care Mgmt., LLC*,
257 P.3d 586 (Wash. 2011) .....6

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Ross v. RagingWire Telecommunications, Inc.*,
42 Cal. 4th 920 (Cal. 2008)....................6

*Ventura v. Montclair State Univ.*,
2011 WL 6339656 (D.N.J. Dec. 19, 2011)....................9

**STATUTES**

Labor Management Relations Act § 301....................9

N.J. Stat. Ann. § 10:5-12(e)....................4

## I. INTRODUCTION

Defendant Ardagh Glass Inc. ("Ardagh") terminated Plaintiff Joseph Cobb's employment after he tested positive for marijuana, consistent with its zero tolerance policy for illegal narcotics. The crux of Cobb's lawsuit is that, because Cobb was allegedly taking medical marijuana to treat the pain from his Marfan's syndrome, Ardagh was required to accommodate his marijuana usage under the New Jersey Law Against Discrimination (NJLAD) and the New Jersey Compassionate Use Medical Marijuana Act ("NJCUMMA").

Cobb has also sued Defendants John McLarty and James Strahan – two managers who worked in Ardagh's safety and human resources departments. McLarty and Strahan notified Cobb that, pursuant to the Company policy of zero tolerance for drug use, his employment was terminated. Notably, McLarty and Strahan had no authority to provide Cobb any relief from the Company policy. They were simply messengers. Ardagh removed this case to federal court notwithstanding the citizenship of McLarty and Strahan because it was clear under New Jersey law that Cobb could not allege a "reasonable basis in fact or colorable ground" to sue these two individual managers. *See In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006). Cobb has moved to remand, arguing that McLarty and Strahan aided discrimination against him by denying his request that his marijuana use be accommodated. He is wrong.

First, to be liable for aiding and abetting a violation of the NJLAD, the individual supervisor must be aware that he is engaged in an illegal or tortious activity. Here, it is impossible for McLarty and Strahan to have known that refusing to accommodate an employee's marijuana use is a violation of New Jersey law because *no one actually knows that* – in fact, every court to consider the issue had held that an employer does *not* have to accommodate an employee's marijuana usage.



EAST\145011437.2

Second, the NJLAD does not impose liability upon an individual supervisor who merely communicates corporate policy and/or the fact of an employee's termination pursuant to that policy. *Collins v. James W. Turner Constr., Ltd.*, No. 16-2877 (FLW)(LGH), 2017 WL 201236, at *9 (D.N.J. Jan 18, 2017) (dismissing individual defendant alleged to have communicated with plaintiff regarding relevant policies underlying plaintiff's termination, forwarded agreements concerning plaintiff's employment, and explained the nature of those agreements to plaintiff). Accordingly, Cobb's Motion to Remand should be denied and this Court should retain jurisdiction over this case.

## II. FACTUAL BACKGROUND

On March 12, 2017, Cobb was injured in a workplace accident and required off-site medical attention. *See* McLarty Decl., Dkt. No. 1-6 ("McLarty Decl.") ¶ 2. Neither McLarty nor Strahan were present at the Bridgeton plant at the time of the accident. *See id.*; Strahan Decl., Dkt. No. 1-7 ("Strahan Decl.") ¶ 2. Cobb was taken to an emergency medical facility, where Cobb received medical treatment for an injured hand. *See id.* While off-site, Cobb was also administered a drug screen in accordance with Ardagh's Substance Abuse Policy. *See* First. Am Compl. ("FAC") ¶ 34; McLarty Decl., ¶ 4. Cobb was discharged from the emergency medical facility that same day. McLarty Decl., ¶ 3.

The following day, March 13, 2017, McLarty accompanied Cobb to an orthopedic specialist for further medical evaluation. *See* McLarty Decl., ¶ 4. While together, Cobb informed McLarty that he had been administered a drug screen, that he expected to test positive for marijuana, and that he had previously been prescribed medical marijuana by a healthcare provider. *See id.*

Ardagh maintains a zero-tolerance Substance Abuse Policy. The policy provides that "[t]he Company will adhere to a zero tolerance drug and alcohol policy," and "[a]n employee

who tests positive for alcohol or drugs will be subject to discharge." (Ex. B to Motion to Remand, Dkt. No. 11-2, at pp. 2, 5.) McLarty advised Cobb that under Ardagh's policy, a positive test result for marijuana would result in Cobb's termination. *See* McLarty Decl., ¶ 5. McLarty also advised Cobb that, because of Cobb's length of service, he would likely be given the opportunity to remain with Ardagh if he agreed to participate in the rehabilitation protocol outlined in the policy. *See id.* The rehabilitation protocol requires that an employee consult with an EAP counselor, pass a drug test, and agree to random drug or alcohol testing during the twelve months following reinstatement. (Ex. B to Motion to Remand, Dkt. No. 11-2, at p. 5.)

Upon returning to the Bridgeton Plant on March 13, 2017, Cobb and McLarty met with Strahan and apprised him of the situation. *See* McLarty Decl., ¶ 6; Strahan Decl., ¶ 3. Strahan confirmed to Cobb that pursuant to the Substance Abuse Policy, unless Cobb availed himself of the rehabilitation protocol, the policy mandated that Cobb be discharged. *See* Strahan Decl., ¶ 4. In response, Cobb told Strahan and McLarty that he would not participate in the rehabilitation protocol and that he intended to continue using marijuana. *See* Strahan Decl., ¶ 4. Cobb claims that he further advised Strahan and McLarty that the Company was under a duty to accommodate his medical marijuana use, and requested that he be reinstated immediately to a light duty assignment to further accommodate his hand injury. Cobb claims that Strahan and McLarty denied his request, and further made remarks that were dismissive of the legitimacy of marijuana use. *E.g.* FAC ¶¶ 46, 52, 74-75.

After the meeting with Cobb, Strahan conferred with Brian Girock, President of the Independent United Workers Union, and escalated the matter to Kelli Hainz, Ardagh's Vice President of Human Resources. Both Girock and Hainz agreed that the Substance Abuse Policy mandated Cobb's discharge. *See* Strahan Decl., ¶ 5. Neither McLarty nor Strahan had any

authority to deviate from the Substance Abuse Policy or selectively apply it. Hainz Decl., Dkt. No. 4, at ¶ 4. Accordingly, on or about March 15, 2017, Cobb's employment was terminated pursuant to Ardagh's Substance Abuse Policy. *See* Strahan Decl., ¶ 6.

## III. ARGUMENT

### A. The Citizenship of Fraudulently Joined Parties Must Be Disregarded for Purposes of Determining Diversity Jurisdiction

Joinder is fraudulent if "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant." *Briscoe*, 448 F.3d at 216. Where joinder is fraudulent, the court should "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Id.* When determining whether a party has been fraudulently joined, the court can look beyond the pleading allegations and consider affidavits to identify indicia of fraudulent joinder. *Id.* at 220.

### B. Cobb Has Not Pled Conduct Against McLarty or Strahan to Reasonably Support a Claim for Aiding and Abetting

Individual liability for acts of discrimination can only arise through the "aiding and abetting" mechanism of the NJLAD. *See* N.J. Stat. Ann. § 10:5-12(e); *Failla v. City of Passaic*, 146 F.3d 149, 158 (3d Cir. 1998); *Cicchetti v. Morris Cty. Sheriff's Office*, 194 N.J. 563, 594 (2008). Individual "employees are not liable as aider and abettor merely because they had some role, or knowledge or involvement." *Failla*, 146 F.3d at 159. To hold an employee liable as an aider or abettor, "a plaintiff must show that (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) ***the defendant must be generally aware of his role as part of an overall illegal or tortious activity*** at the time that he provides the assistance; and (3) the defendant must knowingly and ***substantially assist the principal violation***." *Cicchetti*, 194

N.J. 563, 594 (2008) (internal citations omitted). Here, Cobb's attempt to hold McClarty and Strahan personally liable fails for two reasons.

### 1. Strahan and McLarty Could Not Have Known That Refusing To Permit Employees To Use Medical Marijuana Is A Violation of the New Jersey Law—*No One Actually Knows That*

Here, when Strahan and McLarty notified Cobb that he was terminated under the Company's policy prohibiting marijuana use, there was absolutely no reason for these lay individuals to be "generally aware of [their] role as part of an overall illegal or tortious activity." *Cicchetti*, 194 N.J. 563, 594 (2008). As discussed in detail in Defendants' Motion To Dismiss, filed contemporaneously herewith, neither the New Jersey Law Against Discrimination (NJLAD) nor the New Jersey Compassionate Use Medical Marijuana Act ("NJCUMMA") requires an employer to accommodate an employee's disability by permitting that employee to use medical marijuana. Furthermore, at the time of Cobb's termination, not a single state or federal court anywhere in the United States had found such an obligation.[1] But eight courts from Colorado, Michigan, Washington, New Mexico, Oregon, and California, as well as the 6th and 9th Circuits, had uniformly endorsed two key propositions: (1) employees may be disciplined or terminated for marijuana use, despite state statutes prohibiting discipline for engaging in lawful activity outside of work; and (2) employers need not accommodate medical marijuana use as a disability-related condition. *Garcia v. Tractor Supply Co.*, 154 F. Supp. 3d 1225, 1228-30 (D.N.M 2016); *Curry v. MillerCoors, Inc.*, No. 12–cv–02471–JLK, 2013 WL 4494307, at *7 (D. Colo. Aug. 21, 2013); *Casias v. Wal-Mart Stores, Inc.*, 764 F. Supp. 2d 914, 921-26 (W.D. Mich.

---

[1] After Cobb's termination, the Massachusetts Supreme Court held that permitting an employee to use marijuana is not an unreasonable accommodation as a matter of law. Critically, however, the employer in that case ***waived*** the argument that the Massachusetts law was preempted by the federal Controlled Substances Act, and therefore the court did not resolve the issue. *Barbuto v. Advantage Sales & Marketing*, __ N.E.3d __, 477 Mass. 456 n.9 (Mass. 2017). The decision therefore has minimal if any persuasive value.

2011), *aff'd* 695 F.3d 428 (6th Cir. 2012); *Roe v. Teletech Customer Care Mgmt., LLC*, 257 P.3d 586, 590-92 (Wash. 2011); *Emerald Steel Fabricators, Inc. v. Bureau of Labor & Indust.*, 348 Or. 159, 177-78, 190 (2010); *Ross v. RagingWire Telecommunications, Inc.*, 42 Cal. 4th 920, 926-33 (Cal. 2008); *see James v. City of Costa Mesa*, 700 F.3d 394, 397 & n.3 (9th Cir. 2012).

The requirement that management-level employees be aware of their involvement in illegal or tortious activity before imposing individual liability is entirely consistent with the public policy rationale underlying the imposition of individual liability. Of course, there is a substantial public policy interest in deterring unlawful discrimination and harassment in the workplace by holding supervisors personally accountable. That interest, however, is not implicated when the supervisor did not – and could not – have known that his or her conduct was unlawful. On the other hand, society also has a compelling interest in the "effective management of industrial enterprises" and "effective private sector personnel management." *Reno v. Baird*, 18 Cal. 4th 640, 652-53 (Cal. 1998). "[I]f every personnel manager risked losing his or her home, retirement savings, hope of children's college education, etc., whenever he or she made a personnel management decision, management of industrial enterprises . . . would be seriously affected." *Id.* Supervisory employees would be "coerce[d] . . . not to make the optimum decision for the employer." *Id.* "Instead, the supervisory employee would be pressed to make whatever decision was least likely to lead to a claim of discrimination against the supervisory employee personally," and would be placed in a "direct conflict of interest" with the employer every time they were forced to make a personnel decision. *Id.* Thus, New Jersey law appropriately requires that the supervisory employee at least be aware of an overall illegal or tortious scheme before subjecting the employee to ruinous personal liability. *Cicchetti*, 194 N.J. 563, 594 (2008). Here, the undisputed evidence is that McLarty and Strahan did not – and in

fact, could not – have known that terminating an employee for marijuana usage is illegal or tortious. As a result, they cannot be held liable under an aiding and abetting theory.

**2. Strahan and McLarty Did Not Substantially Assist In Any Violation**

Cobb's termination was effected pursuant to corporate policy, approved by corporate headquarters, and communicated to Cobb by Strahan and/or McLarty, who had no authority to determine whether or not to terminate Cobb. (Notice of Removal, Dkt. No. 1, at ¶¶ 29-32; Hainz Decl., Dkt. No. 4, at ¶ 4.) The roles played by McLarty and Strahan in Cobb's termination were "ministerial" at most, and accordingly, cannot colorably support a claim for individual liability under the NJLAD. *Collins*, 2017 WL 201236, at *9; *see also Docherty v. Cape May Cty.*, No. CV 15-8785 *(*RMB), 2017 WL 2819963, at *13 (D.N.J. June 29, 2017) (dismissing NJLAD claims against supervisors where named supervisors did not create the allegedly discriminatory policy at issue).

The decision in *Casias v. Wal-Mart Stores, Inc.*, 764 F. Supp. 2d 914, 920 (W.D. Mich. 2011), *aff'd*, 695 F.3d 428 (6th Cir. 2012) explains this principle well. There, a medical marijuana user sued his employer and a supervisor for wrongful termination when he was discharged after failing a drug test in violation of company policy. The court held:

> Here, Mr. Casias's challenge is to Wal-Mart's corporate policy, not to any decision applying the policy by Defendant Estill. All Mr. Estill did is communicate the corporation's policy decision to Mr. Casias. Defendant Estill was simply an information conduit. The decision to fire Mr. Casias was actually made by Wal–Mart's corporate office . . . under a corporate-wide policy leaving no room for managerial discretion. Mr. Estill did not have any control, much less significant control, over the employment status of those employees, like Mr. Casias, who used marijuana . . . . Contrary to Mr. Casias's contention, acting solely as a messenger cannot impose liability on a corporate employee.
>
> * * *
>
> Mr. Casias's complaint is with the corporate-wide policy that mandated his termination in this case. There is no legally colorable basis for a claim against Defendant Estill personally, or against any other individual who served in some

> capacity as simple messengers of a foreordained company decision under a company-wide policy . . . . Accordingly, the Court finds that Defendant Estill's citizenship must be disregarded in assessing diversity.

*Id.* Here, as in *Collins* and *Casias*, McLarty and Strahan merely communicated corporate policy to Cobb, and in this regard were "messengers of a foreordained company decision under a company-wide policy." *Id.*

In his brief, Cobb argues that the Substance Abuse Policy "supports Plaintiff's contention that Mr. Strahan and Mr. McLarty aided and abetted discrimination, as they violated their own policy." Pl. Br., at 16. Cobb argues that (1) pursuant to the policy, he never should have been drug tested because the accident was not his fault; (2) Cobb's medical marijuana use did not violate the policy because marijuana is not specifically listed as an "intoxicating drug" in the policy; and (3) Defendants failed to submit Cobb's test results to a Medical Review Officer.[2]

Cobb never articulates why any of these facts, even if true, raise claims against Strahan and McLarty under the NJLAD. Indeed, these allegations sound like breach of contract claims, which have nothing to do with discrimination. But, even assuming the drug policy rises to the level of a contract, neither Strahan nor McLarty were parties who could be sued for breach. Nor does the First Amended Complaint contain any allegations tying Strahan or McLarty to these alleged breaches.

---

[2] These assertions are bizarre. First, Cobb alleges that the guard rail was missing from the machine. Even assuming that is true, it does not follow that Cobb is "clearly not responsible" for sticking his hand in the machine. Second, Cobb contends that he didn't know marijuana was covered by the substance abuse policy because marijuana is not specifically listed by name. (Ex. B to Motion to Remand, Dkt. No. 11-2, at p. 2.) But the Substance Abuse Policy broadly applies to "intoxicating drugs or narcotics," it does not mention *any* particular drug by name. Third, there is no question that the positive drug test was caused by an illegal substance – marijuana – because Cobb *admitted* to using marijuana. Thus there was no need to submit the drug test to a Medical Review Officer based on the potential for a false-positive (*i.e.*, a positive test caused by use of a legal substance, like poppy seeds in a bagel). But in any event, the positive result was actually provided to the Medical Review Officer.

Furthermore, Ardagh's drug testing program is a collectively bargained agreement, and therefore, any claims of breach must go through the grievance and arbitration procedure set forth in Ardagh's collective bargaining agreement with the Independent United Workers Union. Here, the Union concurred that Cobb had violated the policy and pursued no such grievance. Any claims alleging breach of the agreement are, therefore, completely preempted by Section 301 of the Labor Management Relations Act. *E.g. Brandt v. Anheuser-Busch, Inc.*, 2007 WL 1175751, at *2 (D.N.J. Apr. 19, 2007) ("[R]esolution of Plaintiffs' claim would require this Court to interpret the drug-testing provisions . . . of [the] applicable collective bargaining agreement . . . . Plaintiffs' breach of contract claim is, therefore, completely preempted by § 301, and must be dismissed.").

**C. The New Retaliation & Hostile Work Environment Claims Do Not Support Jurisdiction Over Strahan and McLarty**

After this case was removed, Cobb added additional allegations asserting that Strahan and McLarty retaliated against and harassed him. As explained in Defendants' Motion to Dismiss, these claims are meritless and cannot support a colorable claim against Strahan and McLarty. (Motion to Dismiss at pp. 6-7.) To briefly recap, the retaliation allegations fail because: (1) Ardagh had already decided to terminate Cobb's employment, consistent with Company policy, before Cobb engaged in any protected activity; and (2) Defendants did not "retaliate" against Cobb by refusing to accommodate his use of illegal drugs or by discharging him due to his positive test for marijuana. (*Id.* (collecting cases).) The harassment allegations fail because a few alleged comments made during a one-hour meeting on the last day of Cobb's employment questioning the legitimacy of his marijuana usage falls far short of establishing the type of severe and pervasive harassment necessary to state a claim for a hostile work environment. *See Ventura v. Montclair State Univ.*, 2011 WL 6339656, at *10-11 (D.N.J. Dec.

19, 2011) (granting summary judgment for employer on hostile environment claim; "very discourteous" and repetitive mocking of the plaintiff by his supervisor and coworkers on the basis of his protected characteristics was not "sufficiently extreme and hostile to constitute pervasive or severe invidious harassment").

## IV. CONCLUSION

McLarty and Strahan were fraudulently joined to defeat diversity jurisdiction. Cobb's Motion to Remand should be denied and this Court should retain jurisdiction over this case.

Respectfully submitted,

Dated: August 7, 2017

*/s/ Paul Erian*

Paul D. Erian
**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway
Suite 120
Short Hills, New Jersey 07078-2704
T: (973) 520-2550
F: (973) 520-2551
E-mail: paul.erian@dlapiper.com

Rachel Cowen
(*pro hac vice* motion to be filed)
**DLA PIPER LLP (US)**
444 W. Lake Street, 9th Floor
Chicago, IL 60606
T: (312) 368-4000
F: (312) 251-5844
E-mail: rachel.cowen@dlapiper.com

*Attorneys for Defendants Ardagh Glass Inc. (improperly pleaded as "Ardagh Glass, Inc. d/b/a Ardagh Group"), John McLarty and James Strahan.*